Filed 7/9/26  Immigrant Rights Defense Council v. Sklar CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| IMMIGRANT RIGHTS DEFENSE COUNCIL, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>IZABELLA SKLAR et al.,<br><br>Defendants and Respondents. | B343410<br><br>(Los Angeles County Super. Ct. No. 24STCV04208) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed.

Medvei Law Group and Sebastian M. Medvei for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

# I.   INTRODUCTION

Plaintiff Immigrant Rights Defense Council, LLC[1] appeals from an award of attorney fees, contending the trial court abused its discretion by awarding a lower amount than requested. Plaintiff also contends the court erred when it vacated and corrected an earlier judgment.  We affirm.

# II.   BACKGROUND

A.   *Complaint and Settlement*

On March 7, 2024, plaintiff served defendants[2] with a complaint asserting a single cause of action for violation of the ICA.  In the prayer, plaintiff sought injunctive relief, attorney fees, costs, and "such other relief" as the court may order.  Five days later, on March 12, 2024, defendants sent plaintiff's counsel an email containing an initial offer to settle the case.  In that email, defendants offered to stipulate "to being enjoined from committing any allegedly unlawful acts and to pay $2,000 for litigation expenses."  Plaintiff's counsel countered, offering "to stipulate to an injunction enjoining [defendants] from further

---

[1]   Plaintiff describes itself as "a non-governmental organization … bringing actions on behalf of the people of the State of California under the Immigration Consultants Act [(ICA, Bus. & Prof. Code, § 22440 et seq.)] to shut down illegally operated immigration consultant businesses in the State of California."

[2]   Defendants are Izabella Sklar and Access Legal Services and Same Day Marriage in Los Angeles, Inc.

violating the [ICA] and a payment of $20,000."[3] Counsel then exchanged short email messages about the terms of the settlement agreement, but no agreement was reached.

On March 19, 2024, defendants' counsel made an offer to compromise pursuant to Code of Civil Procedure section 998 (section 998) by agreeing to "entry of judgment in favor of [p]laintiff against [d]efendants for injunctive relief as prayed in [c]omplaint, reasonable attorney's fees, and costs." On April 12, 2024, plaintiff filed a notice stating that it had accepted defendants' written offer to compromise. On that same date, the trial court entered a judgment enjoining defendants from violating the ICA and "engaging in the business of an immigration consultant." The judgment also provided that plaintiff "shall be entitled to reasonable attorney's fees and costs."

B. *Motion and Award of Attorney Fees*

On June 24, 2024, plaintiff filed a motion seeking an award of attorney fees and costs, supported by a declaration from counsel claiming that the lodestar amount was $27,150, based on 36.2 hours of attorney work, at a rate of $750 an hour. Plaintiff further sought a multiplier of 1.5 based on counsel's testimony that he had been retained on a contingent fee basis. Plaintiff

---

[3] Plaintiff's demand for "a payment" was inconsistent with its prayer for relief, which sought injunctive relief but no damages, and the ICA, under which an entity, such as plaintiff, that is not aggrieved by a violation of the ICA, may seek only injunctive relief. (Bus. & Prof. Code, § 22446.5, subd. (b).)

therefore sought a total award of $40,725 for attorney fees, plus $60 in filing fees.

On August 28, 2024, defendants filed their opposition to the motion for attorney fees, arguing that the requested fees were unreasonable because, among other things, counsel's bills were inflated, the case included "[p]iggybacked [w]ork," the issues were not complex, and the rate and hours claimed were unreasonable in light of plaintiff's early acceptance of defendants' section 998 offer. Defendants supported their opposition with a declaration from their counsel describing his communications and negotiations with plaintiff's counsel. The declaration attached, among other exhibits, a motion for attorney fees that plaintiff's counsel had filed in another matter two months prior to the filing of the instant attorney fees motion, which sought similar fees and included nearly identical language as that set forth in the instant motion.

On September 3, 2024, plaintiff filed a reply, arguing that the requested lodestar and multiplier were reasonable.

On that same date, plaintiff filed objections to defendants' evidence, including objections to the declaration of defendants' counsel and three of the four attached exhibits, on the grounds of relevance, hearsay, lack of foundation, and lack of authentication.

On November 18, 2024, the trial court conducted a hearing on plaintiff's attorney fees motion. The court stated that actions alleging a violation of the ICA were "not complicated" and plaintiff's request for over $40,000 in attorney fees was unreasonable. The court also observed that counsel had "lost credibility" when he submitted a declaration that included "excessive amounts." Following argument, the court took the matter under submission.

4

Later that day, the trial court issued a written ruling on the fee motion.  The court first declined to rule on plaintiff's evidentiary objections, stating that, outside the summary judgment and anti-SLAPP contexts, it was unaware of any requirement that it rule on individual objections and that it was familiar with the rules of evidence and the weight to be accorded the proffered opposition evidence.  It then agreed that counsel's requested hourly rate of $750 was reasonable.  The court observed, however, that "billing at a high rate comes with the expectation that the attorney also works in an efficient manner that reflects the premium paid for his or her services."  (Boldface omitted.)  The court cited counsel's March 29, 2024, billing entry for preparation of discovery requests—for services rendered 10 days after defendants' section 998 offer was served—as an example of an unreasonable service, given defendant's immediate willingness to settle the case.  The court also questioned the accuracy of counsel's numerous billing entries for "'settlement negotiations'" and "'meet and confer re settlement'" because "the supposed negotiations occurred via short emails with [d]efendants' counsel and [p]laintiff billed for some settlement negotiation calls that did not occur."[4]  The court noted that it had

---

[4]     Plaintiff's counsel did not seek recovery for telephone calls. He did, however, declare that he spent 0.5 hours reviewing defendant's section 998 offer; one hour on settlement negotiations with defendants' counsel, from March 20, 2024, to March 22, 2024; one hour preparing a stipulation and proposed judgment on March 25, 2024; 0.5 hours meeting and conferring regarding a settlement, from March 25, 2024, to March 26, 2024; 0.5 hours reviewing defendants' proposed stipulation and judgment; 0.5 hours preparing a revised stipulation and proposed judgment; 1.2 hours having settlement discussions with defendants' counsel,

"a lot of experience in evaluating fee bills and assessing what is reasonable. Without a doubt, the bill here is one of the most unreasonable bills this court has ever seen. Therefore, considering this significant amount of unnecessary and unreasonable charges, the court finds based upon its experience and knowledge of this type of litigation, the lack of novelty and complexity of this case, and, to align with the hours that should reasonably have been incurred, a reasonable lodestar amount is seven hours." (Boldface omitted.) The court then ordered as follows:

"1. Motion for Attorneys' Fees and Costs is GRANTED in part;

"2. Plaintiff is awarded $5,885.66;

"3. Plaintiff to file a proposed amended judgment … ."

C.    *Judgment Awarding Attorney Fees*

On November 18, 2024, plaintiff submitted a proposed "first amended judgment," which the trial court signed and filed on November 22, 2024 (first judgment). The first judgment stated,

---

on March 26, 2024, to April 4, 2024; and one hour preparing an acceptance of the section 998 offer.

In defendants' opposition to the motion for attorney fees, defendants' counsel declared that between March 20, 2024, to March 22, 2024 (when plaintiff's counsel claimed that he spent one hour on settlement negotiations), the parties' respective counsel did not speak on the phone and instead only exchanged "a few very brief emails." In addition, defendants' counsel declared that although plaintiff's counsel claimed that he spent 1.2 hours on settlement discussions between March 16, 2024, to April 4, 2024, "there were no discussion[s] in person or by phone calls."

6

"Plaintiff shall be entitled to reasonable attorneys' fees in the amount of ... $5,885.66 to be paid jointly by [d]efendants directly to [p]laintiff's attorney." On November 22, 2024, defendants filed an objection to the proposed judgment, noting that the court, in its final ruling, had awarded attorney fees to plaintiff, but had not ordered that the fees be paid directly to plaintiff's attorney. On November 27, 2024, defendants submitted an ex parte application to correct the first judgment, supported by a declaration from defendants' counsel explaining that plaintiff had served defendants the proposed first judgment by mail and defendants therefore did not receive notice of it until November 22, 2024. Counsel further explained that prior to receiving the first judgment, he had mailed a check for $5,885.66 to plaintiff and received confirmation of delivery.

On December 2, 2024, the trial court conducted a hearing on defendants' ex parte application to correct the first judgment.[5] The court granted the application, recalled the first judgment, and ordered counsel to lodge a new proposed judgment that conformed with the court's November 18, 2024, order.

On December 17, 2024, the trial court entered a "first amended judgment" that omitted the language directing defendants to send the fees directly to plaintiff's counsel and instead provided only that "[p]laintiff shall be entitled to reasonable attorneys' fees in the amount of … $5,885.66" (second judgment).

Plaintiff timely filed a notice of appeal from both the first judgment entered on November 18, 2024, and the order on the ex parte application entered on December 2, 2024.

---

[5] The record does not include a reporter's transcript of the ex parte proceedings.

# III.   DISCUSSION

## A.   *Evidentiary Objections*

Plaintiff challenges the trial court's failure to rule on its objections to three exhibits—the articles of organization for the plaintiff LLC; defendants' offer to compromise; and a publication about hundreds of similar lawsuits filed by plaintiff's counsel— and the entirety of defense counsel's declaration, arguing that the court had a duty to rule on the objections.  But plaintiff does not argue that the court relied on those exhibits or specific testimony from counsel's declaration in making its ruling on the fee application or otherwise attempt to show how it would have achieved a different outcome if those exhibits and specific declaration testimony had been excluded.  And, the record of the attorney fee hearing and the court's ruling on the fee motion show that the court relied primarily on plaintiff's own billing statements, the court's experience with adjudicating fee applications generally and, specifically, its familiarity with these types of lawsuits to conclude that the declaration testimony of plaintiff's counsel was not credible and his billing statements were inflated.

"In order to obtain a reversal of the judgment, an appellant bears the burden of demonstrating not only that the trial court committed error but also that the error was prejudicial. [Citation.]"  (*D.D. v. Pitcher* (2022) 79 Cal.App.5th 1047, 1057.) "Prejudice is not presumed."  (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455; see *DiRaffael v. California Army National Guard* (2019) 35 Cal.App.5th 692, 718 ["[A]ppellant makes general claims of prejudice, and identifies some specific examples of purported errors by the trial court, but never explains how

those errors affected the outcome of his case. These conclusory assertions of prejudice are insufficient"].) Plaintiff has not demonstrated that it was prejudiced by any presumed error. We therefore reject plaintiff's arguments based on its challenge to the court's failure to rule on the evidentiary objections.

B.    *Attorney Fees Award*

Plaintiff contends the trial court abused its discretion when it:  (1) applied an "across-the-board 81 [percent] cut of [plaintiff's] fee request" (boldface omitted) and (2) failed to provide a "'clear explanation'" for its decision not to apply a 1.5 multiplier.

1.    <u>Standard of Review and Legal Principles</u>

A prevailing plaintiff in an ICA action is entitled to recover reasonable attorney fees and costs.  (Bus. & Prof. Code, § 22447.5, subd. (b).)  "[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney ... involved in the presentation of the case.'" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131–1132 (*Ketchum*).)  "In fixing the lodestar amount, the trial court may not blindly accept as reasonable the attorney-applicant's reported hours or their hourly rates; to the contrary, the court 'must carefully review attorney documentation of hours expended' to avoid "'padding[.]'" (*Ketchum*, [*supra*, 24 Cal.4th] at p. 1132[.]) ... ." (*Cash v. County of Los Angeles* (2025) 111 Cal.App.5th 741, 747, review granted Aug. 20, 2025, S291827.)  "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject

9

to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)

"[T]he trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." (*Ketchum*, *supra*, 24 Cal.4th at pp. 1138–1139.)

    2.   <u>Analysis</u>

We reject plaintiff's characterization of the trial court's ruling. Although the court awarded plaintiff fees that were less than plaintiff requested, it did not apply an across-the-board reduction in fees. Instead, it conducted a lodestar analysis: it determined an hourly rate of $750 was reasonable for the services of plaintiff's counsel and, based on its experience with ICA fee applications and the record of the parties' settlement negotiations, that seven hours was a reasonable amount of attorney time.

Further, and contrary to plaintiff's characterization, the trial court provided an explanation for its ruling, by stating its findings that: the violation alleged in the complaint was not complicated; an attorney with the experience of plaintiff's counsel and corresponding billing rate should reasonably perform work in a more efficient manner; the time claimed for negotiating the settlement agreement was unreasonably high given the short emails exchanged between the parties; and counsel's purported preparation of discovery requests was unreasonable given the

parties' early settlement agreement.  The court therefore did not abuse its discretion when it awarded attorney fees.

C.    *Judgment*

Plaintiff next contends that the trial court erred when it filed the second because it was "without authority to vacate the [first judgment], particularly on an ex parte basis." (Capitalization and boldface omitted.)  We disagree.

According to plaintiff, the first judgment "reflects no actual error in that it correctly awards [plaintiff's] attorney, and not [plaintiff], the fees in question."  But plaintiff does not dispute that the first judgment included a direction that defendants pay the fee award "directly to [p]laintiff's attorney," which was not included in the court's November 18, 2024, order.  A "court has inherent power either on its own motion, or on ex parte application, or on notice, to set aside an order or judgment taken through its own inadvertence or mistake." (*Estate of Costa* (1951) 37 Cal.2d 154, 157; see also *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 ["A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a nunc pro tunc order"].)  Thus, the trial court here "properly exercised its inherent power in setting aside [the first judgment] when attention was called to the inadvertence." (*Estate of Costa*, *supra*, 37 Cal.2d at p. 157.)

11

## IV. DISPOSITION

The November 18, 2024, judgment and December 2, 2024, order are affirmed. No costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.